958 F.2d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee
v.
Anton BAUMANN, Defendant/Appellant
 No. 91-2649.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 3, 1992.*
Decided March 23, 1992.
As Modified March 31, 1992.
 
 Before BAUER, Chief Judge, MANION, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 In a judgment rendered on May 17, 1991 the district court revoked Anton Baumann's citizenship and cancelled his naturalization pursuant to 8 U.S.C. § 1451(a). Section 1541(a) allows for revocation of citizenship that was "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation. The district court found that because of Baumann's service as an armed guard at a Nazi concentration camp during World War II, he was not lawfully admitted into the United States. In addition, because he gave false testimony for the purpose of obtaining immigration benefits, he lacked the moral character required for naturalization. We affirm.
 
 BACKGROUND
 
 2
 The critical facts in this case involve Baumann's alleged service in the Waffen-SS and his failure to note this service when applying for an immigrant visa and later naturalization. Baumann, of ethnic German origin, was born on May 17, 1911 in Such Borova, Yugoslavia. After four years of schooling in Such-Borova he worked there as a carpenter's apprentice and then as a carpenter. In 1936 he married and in 1941 he had a child. He served in the Yugoslavian army from November 1937 through May 1941.
 
 
 3
 The Waffen -SS ("SS") was the elite guard and intelligence unit of the Nazi Party. The SS-Totenkopf Sturmbann ("Death's Head Batallion") was the section of the armed SS formed for the purpose of guarding the Nazi concentration camps. Baumann's history with the SS Death's Head Battalion was documented by an SS Personnel Data Card and a roster of the SS Death's Head Battalion at Stutthof Concentration Camp ("Stutthof"). Baumann stipulated to the authenticity of these documents.
 
 
 4
 The SS Personel Data Card includes a picture of Baumann in the Death's Head Batallion uniform and identifies Baumann by his correct date and place of birth, profession, spouse, ethnic German origin, the number and sex of his children and prior military service. The roster identifies Baumann by place and date of birth and by his spouse's name and place of birth.
 
 
 5
 According to these documents, Baumann began service with the SS on November 18, 1942 and was a member of the Death's Head Battallion. From November 18, 1942 until September 1943, he served as an armed guard at Stutthof, near Danzig Germany. The parties stipulated that the operation of Stutthof constituted activity or conduct contrary to civilization and human decency on behalf of the Axis countries during World War II. In September 1943, he was transferred to Buchenwald Concentration Camp.
 
 
 6
 Baumann entered the United States under the Displaced Persons Act of 1941 ("DPA"), Pub.L. No. 80-774, § 2, 62 Stat. 1009, amended by Pub.L. No. 81-555, 64 Stat. 219 which authorized European refugees to emigrate to the United States after World War II. The DPA excluded individuals who "assisted the enemy in persecuting civilians."
 
 
 7
 On June 15, 1950, Baumann applied for and was granted an Immigrant Visa and Alien Registration at the U.S. Consulate in Salzburg, Austria. On his Application for Immigrant Visa, he responded that his place of residence from 1925-1944 was Such-Borova, Yugoslavia. He did not disclose his membership in the SS, his tenure at Stuffhof or the nature of his duties there. Baumann swore under oath to the truth of the statements on his application. His was admitted to the United States at the Port of New York City on July 5, 1950.
 
 
 8
 In 1957, Baumann filed an "Application to File Petition for Naturalization" and a "statement of Facts for Preparation of Petition" (collectively "INS Form N-400) with the Immigration and Naturalization Service. Question 9 of Form N-400 asked him to list every organization, association or group in which he had been a member and Baumann responded "None." Provision 19 of the form provided that "no person shall be regarded as a person of good moral character who ... has given false testimony for the purpose of obtaining any benefits under the Immigration and Naturalization laws." He swore under oath before a naturalization examiner that all his answers were true and then filed his Petition for Naturalization. On May 14, 1957, his Petition for Naturalization was granted and he was issued a Certificate of Naturalization.
 
 District Court Proceedings
 
 9
 Bauman made no attempts to rebut the Government's case. He refused to answer questions at his deposition, asserting a Fifth Amendment privilege. He did not testify at trial and presented no witnesses on his behalf. The Government presented two survivors of the Stutthof camp who described the conditions during the November 1942 to December 1943 time period, including vivid descriptions of brutal atrocities committed by members of the Death's Head Batallion. The Government also presented testimony of Dr. Charles Snydor, a recognized expert on the SS and Frank Walters who was a visa analyst with the State Department during the time Bauman applied for his visa.
 
 
 10
 The government was required to prove its case by clear and convincing evidence. The district court found that the government had met this burden by proving that Baumann served as an armed guard at Stutthof. Therefore he was ineligible for a visa under the 1924 Act. Moreover, by giving false testimony for the purpose of obtaining immigration benefits, he lacked the statutorily required good moral character prerequisite to becoming an American citizen.
 
 ANALYSIS
 
 11
 Baumann does not dispute the contents of his visa and petition for naturalization. He does not dispute the fact that service as an armed concentration guard would have barred him from obtaining his visa under the 1924 Act. Nor does he dispute that giving false information on his visa application and petition for naturalization constitutes lack of requisite moral character required for naturalization.
 
 
 12
 Therefore, the only issue on appeal is the factual determination that he was an armed guard at Stutthof. Baumann argues that because there was no testimony that anyone saw him at Stutthof and no testimony that he was seen with a gun, there is insufficient evidence to revoke his citizenship. He also argues that the testimony of Snydor was insufficient to meet the government's burden of proof. Finally, Baumann argues that because there was no proof of particular conduct by him, under the rationale of the recent Sixth Circuit decision in Petkiewytsch v. INS, 945 F.2d 871 (6th Cir.1991), he cannot be deported. All of these arguments are without merit.
 
 
 13
 We review the factual findings of the district court under the clearly erroneous standard. Fed.R.Civ.P. 52(a); United States v. Kairys, 782 F.2d 1374, 1379 (7th Cir.1986). Although the government bears a heavy burden in a denaturalization proceeding, there must be strict compliance with congressionally imposed prerequisites to citizenship. Fedorenko v. United States, 449 U.S. 490, 506 (1980). As a matter of law, disclosure of the fact that a petitioner served as an armed guard at a concentration camp makes him ineligible for a visa. Id. at 509. United States v. Kairys, 782 F.2d 1374 (7th Cir.1986).
 
 
 14
 Baumann's contention that the government had to prove personal involvement is erroneous. If the government proved his service as an armed uniformed guard, it sufficiently established that he assisted in persecution of persons. U.S. v. Schmidt, 923 F.2d 1253, 1259 (7th Cir.1991) (by proving that that petitioner was a member of "Death's Head Battalion" at Sachsenhausen concentration camp, government met its burden).
 
 
 15
 The district court was not clearly erroneous when it determined that Baumann served as an armed guard at Stutthof. Contrary to Baumann's contention, the district court did not rely on Dr. Snydor's testimony or the underlying exhibits introduced as part of his testimony. It relied instead on the documents which Baumann stipulated to as authentic--the SS Personnel Card which contains his photo and accurate identifying information, a photograph of Baumann in a Death's Head Batallion uniform, and the SS roster from Stutthof. In addition, the court relied on Walters' uncontroverted testimony that all concentration camp guards were ineligible for United States' visas at the time the defendant filed his application.
 
 
 16
 In his reply brief, Baumann argues disingenuously that the stipulation as to authenticity is not as broad as the government contends and that he did not waive his right to challenge the accuracy of the information contained therein. This argument ignores the fact that at no point in this proceeding has Baumann attempted to rebut the government's allegations or challenged the veracity of the information contained in his Personnel Card, the SS Roster or the visa application. He does not claim that this is a case of mistaken identity. What little information he has provided during the proceeding includes his birth date, birthplace, marital information, ethnic origin, and occupation, all of which comport with the information contained on his SS Personnel Card. There is nothing in the record challenging the accuracy of these documents, and therefore the district court decision was not clearly erroneous.
 
 
 17
 Petkiewytsch v. INS, 945 F.2d 871 (6th Cir.1991) does not change the result. It is a decision under the Holtzman Amendment and in fact recognizes that neither voluntariness nor proof of actual participation in atrocities are considerations under the DPA. Petkiewytsch stands for the narrow proposition that under the Holtzman Amendment, where it is undisputed that a permanent resident alien 1) served as an armed guard at a Nazi "labor education" camp involuntarily and under duress, and 2) did not personally commit acts of abuse, deportation is not required.
 
 
 18
 Petkiewytsch does not, as Baumann suggests, hold that under the DPA or the Holtzman Act, the government must prove that an individual served voluntarily and actually committed acts of persecution. Moreover, to the extent that it holds that personal involvement in atrocities is required for deportation under the Holtzman Amendment, Petkiewytsch conflicts with the law in this circuit. See Schellong v. INS, 805 F.2d 655, 661 (7th Cir.1986) (purposes of DPA and Holtzman Act identical; insofar as cases from other jurisdictions hold that personal involvement is necessary to have assisted in persecution for purposes of the DPA or the Holtzman act, they conflict with Fedorenko ).
 
 
 19
 By relying on Petkiewytsch, Baumann is grasping at straws. The undisputed evidence shows that he was a member of the SS who served as an armed guard at a concentration camp. As a matter of law, he was ineligible for a visa under the 1924 Act.
 
 CONCLUSION
 
 20
 For the foregoing reasons, the decision of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 *
 After scheduling this case for oral argument, the court vacated its order upon motion by counsel for the appellant. This appeal was submitted on the briefs without oral argument